IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATALIE MOUSSA,

          Plaintiff,

v.                                  Case No. 24-2213-JWB

ADVENT HEALTH SOUTH OVERLAND PARK, INC.,

          Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss. (Doc. 4.) The motion is fully briefed and ripe for decision. (Docs. 5, 8, 9.) The motion is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

**I.    Facts**

The facts set forth herein are taken from Plaintiff's complaint. (Doc. 1.) Plaintiff was previously employed by Defendant as an emergency room registered nurse. She began her employment in October 2021. Early in 2022, Plaintiff began receiving discriminatory comments from patients based on her skin color, which is dark brown, and her national origin, which is Egyptian. One patient screamed that Plaintiff "did 9/11." (Doc. 1 ¶ 5.) Plaintiff reported this to Diane Amos, Plaintiff's charge nurse, who told her to ignore it. On subsequent occasions, Ms. Amos made discriminatory comments to Plaintiff, such as "are you sure you are supposed to be here?," "I doubt you are the person who will be in the ER," and "You do not look like someone who should be here." (*Id.* ¶ 8.) Plaintiff also overheard Ms. Amos telling another employee that she was going to "smack the shit out of" Plaintiff. (*Id.* ¶ 9.)

1

In March 2022, Plaintiff reported these comments and actions to Kelsey Allen-Scruggs. Plaintiff told Allen-Scruggs that Ms. Amos's conduct was not in line with Defendant's mission and the conduct needed to be addressed in accordance with the zero tolerance policy regarding workplace violence and bullying. (*Id.* ¶ 10.) Plaintiff alleges that she had to endure other comments, such as: being told by Jared Bogard, a charge nurse, that "maybe your face" was the issue after a patient slapped her; another nurse, Bruce Fraiser, commenting that it sounded like Plaintiff was "choking on something" when she spoke in Hebrew; another nurse told Plaintiff that she was "getting darker than most black people;" and another nurse asked Plaintiff to take care of a patient because it "looked like they were both from the same place." (*Id.* ¶ 11.)

In early 2023, Plaintiff complained to Lauren Stillwell that she did not feel safe at the company. Ms. Stillwell responded by stating that she was "sorry" Plaintiff felt that way. (*Id.* ¶ 12.) In March 2023, she had a meeting with Ms. Stillwell and Aubrey Winegarner[1] during which they told her that "based on your face it really doesn't seem like you care about patient safety." (*Id.* ¶ 13.) On April 10, 2023, Ms. Stillwell called and asked Plaintiff for a meeting. Plaintiff asked if she was being investigated or fired and offered her resignation but Ms. Stillwell told her that "it would not matter." (*Id.* ¶ 18.) Plaintiff was terminated on April 17 for policy violations. Plaintiff alleges that there was not a full investigation into the alleged policy violations and that the allegations were untrue. Plaintiff's complaint fails to set forth the nature of the policy violations.

Plaintiff filed a charge with the EEOC on July 27, 2023, and was issued a right to sue letter on February 27, 2024. Plaintiff filed her employment discrimination complaint against Defendant on May 20, 2024. Plaintiff brings claims of color and national origin discrimination in violation

---

[1] Plaintiff does not identify the positions held by Ms. Stillwell and Ms. Winegarner.

of Title VII, 42 U.S.C. § 2000e. Plaintiff also asserts claims of hostile work environment and retaliation under Title VII. Defendant has now moved to dismiss the complaint.

**II.     Standard**

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007).

**III.    Analysis**

**A. Color and National Origin Discrimination**

Plaintiff has alleged that Defendant discriminated against her on the basis of her color and national origin in violation of Title VII. To demonstrate a prima facie case of discrimination based on color or national origin, Plaintiff must establish that (1) she suffered an adverse employment action; and (2) the challenged action took place under circumstances giving rise to an inference of discrimination on the basis of her color or national origin.[2] *See Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 627 (10th Cir. 2012) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). "A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than [t]hreadbare recitals of the

---

[2] Courts often include a third element: that the plaintiff belongs to a protected class. *See, e.g., Daniels*, 701 F.3d at 627. However, that element can be misleading. Title VII does not limit its protections to disfavored groups or classes of people. *See* 42 U.S.C. § 2000e-2(a). Rather, it prohibits certain categories of discrimination, such as discrimination on the basis of race or sex. *See id.*; *see, e.g. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, 118 S. Ct. 998, 1001, 140 L. Ed. 2d 201 (1998) ("Title VII's prohibition of discrimination 'because of ... sex' protects men as well as women.")

3

elements of a cause of action, supported by mere conclusory statements." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (internal quotations omitted). The Tenth Circuit does not "mandate the pleading of any specific facts in particular, [but] a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation." *Id.* at 1274–75 (internal quotations omitted). Factual allegations relevant to this inquiry include: "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . , preferential treatment given to employees [with different relevant characteristics] . . . or, more generally, upon the timing or sequence of events leading to plaintiff's termination." *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).

Defendant moves for dismissal of this claim on the basis that Plaintiff has failed to allege any facts which would support that her termination was due to her color or national origin. In response, Plaintiff argues that the facts alleged are sufficient to support an inference of discrimination because the assertion by Defendant that she violated policies was false. (Doc. 8 at 3–4.) In reviewing the sufficiency of her complaint, the court is to consider the facts that Plaintiff has alleged but not conclusory statements. Plaintiff's allegation that her termination was based on allegations that were false is entirely conclusory. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (discussing that a conclusory allegation that the reason for termination was false is not sufficient and was not considered in evaluating the sufficiency of the allegations). Therefore, the court will not consider it. *See id.* Plaintiff has also included allegations in her complaint that other employees who were not dark skinned or Egyptian "did not face similar treatment." (Doc. 1 ¶¶ 25, 33.) Preferential treatment to individuals whose characteristics differ from those on which Plaintiff relies as the basis for her discrimination claim (in this case, color or

4

national origin) can support an inference of discrimination, but Plaintiff's allegations are conclusory and her complaint fails to provide any factual support regarding the treatment of similarly situated employees. Therefore, these conclusory allegations also fail to show an inference that her termination was based on her color or national origin.

The remaining factual allegations Plaintiff points to in her response involve statements by Diane Amos over a year before Plaintiff's termination, statements by other nurses and patients on unknown dates, the statement in early 2023 by Lauren Stillwell that she was "sorry" Plaintiff felt unsafe while working, and a March 2023 meeting with Ms. Stillwell and Aubrey Winegarner during which they told her that "based on your face it really doesn't seem like you care about patient safety." (Doc. 1 ¶¶ 12–13.)

With respect to Ms. Amos's statements, Plaintiff's complaint fails to link these statements to her termination. Further, they were made by an individual who was not alleged to have been involved in Plaintiff's termination. Therefore, the statements do not support a finding that Plaintiff's color or national origin played a role in her termination. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) ("A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the [defendant's] termination decision, and therefore that [color or national origin] actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome.") (internal quotations and citations omitted). The remaining statements made by patients and other nurses also fail to give rise to an inference of discrimination. These were stray remarks made by individuals who were not alleged to have been involved in Plaintiff's termination. Therefore, they do not support an inference that her termination was motivated by discrimination. *See Hysten v. Burlington N. Santa Fe Ry. Co.*, 415

F. App'x 897, 911–12 (10th Cir. 2011) (stray remarks and statements made by non-decisionmakers cannot be used to establish that the termination was due to discrimination).

Finally, Plaintiff has alleged that the decisionmaker, Ms. Stillwell, made two different statements. The first statement was to tell Plaintiff that she was sorry Plaintiff felt unsafe at work. This statement does not reference Plaintiff's color or national origin and Plaintiff makes no effort in her response brief to show how this statement is discriminatory. Next, Ms. Stillwell made a statement during a meeting approximately one month prior to her termination that "based on your face it really doesn't seem like you care about patient safety." (Doc. 1 ¶ 13.) In her response brief, Plaintiff argues that this comment was based on Plaintiff's skin color and facial structure but Plaintiff provides no basis to support this assertion. (Doc. 8 at 5.) This comment is vague and ambiguous. There is no indication from the allegations in the complaint that this comment had to do with Plaintiff's color or national origin. Rather, based on the allegations in the complaint, it appears that Plaintiff interpreted the statement as her exhibiting a reaction on her face during a meeting with Ms. Stillwell. *See* Doc. 1 ¶ 13 (Plaintiff alleges that she was not making a strange face but that her face was relaxed.) Plaintiff's complaint makes no effort to plead facts showing that this statement was made because of her color or national origin. Had Ms. Stillwell made discriminatory comments based on Plaintiff's color on other occasions, it may be reasonable to infer that this comment was also directed at the color of her face. But Plaintiff has not alleged any other discriminatory comments by Ms. Stillwell, the decisionmaker. Plaintiff fails to allege facts to support a finding that this seemingly neutral comment about the look on her face was a discriminatory remark about her color or national origin. *C.f., Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1543 (10th Cir. 1995) (discussing that gender neutral comments do not demonstrate

gender discrimination). Plaintiff's complaint fails to plausibly allege that her termination took place under circumstances giving rise to an inference of discrimination.

Plaintiff also argues in her response brief that in addition to termination she suffered "multiple adverse employment actions" while employed by Defendant. (Doc. 8 at 4.) Plaintiff's brief in this respect is entirely conclusory. She states that she was assigned to certain work because of her skin color and she did not receive the same work assignment benefits as her white counterparts. Plaintiff, however, did not plead any facts regarding these alleged adverse employment actions. Further, Plaintiff makes no effort to show that any alleged adverse action caused a "significant change in employment status or benefits." *Brown v. Austin*, 13 F.4th 1079, 1092 (10th Cir. 2021).

The court finds that Plaintiff's complaint fails to sufficiently state facts from which one could reasonably infer that Defendant's decision to terminate her employment was motivated by her color and/or national origin.

**B. Hostile Work Environment**

Next, Defendant moves to dismiss Plaintiff's claim of hostile work environment on the basis that Plaintiff has not sufficiently stated a claim. A hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (quoting *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Plaintiff can establish her claim of a hostile work environment based on unlawful color or national origin discrimination by showing (1) she was harassed because of her national origin or color, and (2) that the harassment was sufficiently severe or pervasive such that it altered the terms or conditions of her employment. *Id.* *See also Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). "An employer can be held

liable if its employees create a hostile work environment and it knew or should have known about the conduct but failed to stop it." *Id.* (internal quotation and citation omitted).

Defendant argues that Plaintiff's allegations do not support a finding that the harassment was sufficiently severe or pervasive and that the harassment was because of her national origin or color. The authority cited in support of its motion, however, were decisions on summary judgment. (Doc. 5.) Plaintiff has alleged that her charge nurse made several comments that Plaintiff should not be working in the emergency room and that someone like her shouldn't be there. Plaintiff has also alleged that she reported these comments to management who ignored her complaints and that other discriminatory comments were made to Plaintiff by other nurses and patients. These comments include telling Plaintiff she was darker than a black person and that she should help a patient because they were both from the same place. The comments, liberally construed in a light most favorable to Plaintiff, were directed at her because of her color and/or national origin. Viewing all of the allegations as a whole, Plaintiff has sufficiently demonstrated that she was subjected to harassment based on her national origin and/or color and that the harassment was pervasive in that it continued over a period of time. At this stage of the proceedings, Plaintiff only has to "nudge [her] claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1190. Based on her factual allegations discussed herein, Plaintiff has done so based on authority in this district. *See*, *e.g, Clay v. United Parcel Serv., Inc*., 983 F. Supp. 2d 1331, 1342 (D. Kan. 2013) (finding plaintiff sufficiently alleged claim where plaintiff overheard racial slurs on radio, defendant ignored plaintiff's complaint about co-worker's confederate flag license plate, and co-worker told plaintiff a joke with racially offensive terms); *Zhu v. Fed. Hous. Fin. Bd*., 389 F. Supp. 2d 1253, 1287 (D. Kan. 2005) (finding plaintiff plausibly alleged hostile work environment based

8

on her national origin even though she alleged "only two derogatory references to her national origin").

Defendant's motion to dismiss Plaintiff's hostile work environment claim is denied.

**C. Retaliation**

Finally, Plaintiff also brings a claim of retaliation under Title VII and contends that she was terminated after reporting unlawful discrimination and harassment to management and/or human resources. Plaintiff must establish this claim by showing 1) that she engaged in protected opposition to discrimination, 2) "that a reasonable employee would have found the challenged action materially adverse," and 3) "that a causal connection exists between the protected activity and the materially adverse action." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007)).

To engage in protected opposition to discrimination, Plaintiff must oppose an employment practice made unlawful by Title VII. *Faragalla v. Douglas County Sch. Dist. RE 1, et al.*, 411 F. App'x. 140, 148 (10th Cir. 2011). Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff therefore engages in protected activity if she opposes employment discrimination based on one of these protected categories. *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011) ("Protected activity consists of activity opposing or complaining about discrimination by the employer based on race, color, religion, gender, or national origin.") The filing of a formal charge constitutes protected activity as well as voicing informal complaints to superiors. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007) (citing *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004)). "Although no magic words are required, to qualify as protected opposition the employee must

9

convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). A "vague reference to discrimination . . . without any indication that this misconduct was motivated [by color or national origin] does not constitute protected activity and will not support a retaliation claim." *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004). Further, a complaint about unfair treatment in general is not "protected opposition to discrimination unless the basis for the alleged unfair treatment is some form of unlawful discrimination in violation of Title VII." *Faragalla*, 411 F. App'x at 148.

Plaintiff's complaint sets forth two different occasions on which Plaintiff voiced concerns to management. In March 2022, Plaintiff reported Ms. Amos's comments to Kelsey Allen-Scruggs. In this complaint, Plaintiff states that Ms. Amos violated Defendant's "zero tolerance policy regarding workplace violence and bullying." (Doc. 1 ¶ 10.) Plaintiff did not report to Ms. Allen-Scruggs that Ms. Amos's conduct violated a discrimination policy nor does she assert that she viewed Ms. Amos's comments as discrimination on the basis of her color or national origin. As a result, her complaint did not give notice to Defendant that she believed that Ms. Amos was discriminating against her on a protected basis. Instead, this complaint shows that Plaintiff was concerned for her physical safety and believed that Ms. Amos was bullying her. The court finds that her March 2022 complaint does not refer to unlawful discrimination on the basis of color or national origin and therefore does not qualify as protected activity.

Further, even if her complaint could be considered protected activity, Plaintiff has failed to establish causation. The alleged protected activity occurred in March 2022 and Plaintiff makes no effort to show that her March 2022 complaint was the cause of her termination. Although a retaliatory motive may be inferred when adverse action closely follows protected activity, a long

period of time will not suffice to show a causal connection. *See e.g., Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) ("If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection."); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (noting that a three-month period is insufficient to establish causation); *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (finding that a 46-day period between the protected activity and the allegedly retaliatory action "barely" supports an inference of causation without additional allegations). Therefore, even if the March 2022 complaint constituted protected activity, Plaintiff has failed to plausibly allege causation and the passage of time between the March 2022 complaint and her April 2023 termination is too long to infer causation.

Next, Plaintiff asserts that her complaint in March 2023 that she felt "unsafe" while working constituted protected activity. This complaint is "even further removed from qualifying as protected opposition to discrimination than" her March 2022 complaint. *See Oldridge v. City of Wichita, Kansas*, No. 22-3104, 2023 WL 3965839, at *5 (10th Cir. June 13, 2023). It is entirely vague and fails to provide any context as to the reason she felt unsafe at her workplace. There is no basis to conclude that she was complaining of unlawful discrimination in this complaint. Therefore, it does not constitute protected activity.

In her response brief, Plaintiff recognizes that she did not use the "magic words" in making her complaint but claims that Defendant did not allow her "to elaborate on her safety issues." (Doc. 8 at 8.) Plaintiff's assertion that Defendant somehow precluded her from making a full complaint about discrimination is not supported by her allegations in the complaint. Further, even if she had been given the opportunity to elaborate about safety issues, she could not succeed on a retaliation claim because "an employer cannot engage in unlawful retaliation if it does not know

that the employee has opposed . . . a violation of Title VII," *Faragalla*, 411 F. App'x at 148–49, because concerns over safety is not synonymous with discrimination.

## IV.     Conclusion

Defendant's motion to dismiss (Doc. 4) is GRANTED IN PART and DENIED IN PART. Defendant's motion is granted with respect to Plaintiff's claims of discrimination and retaliation. Defendant's motion is denied with respect to Plaintiff's hostile work environment claim.

IT IS SO ORDERED.  Dated this 4th day of October 2024.

                                                     __s/ John W. Broomes_____
                                                     JOHN W. BROOMES
                                                     UNITED STATES DISTRICT JUDGE